Jambs S. Brown, J.
Plaintiff moves for an injunction pendente lite restraining and enjoining defendants from striking, picketing, conducting sit-down strikes and from engaging in any other related activity interfering with the conduct and operation of the plaintiff’s institution as detailed in the order to show cause.
Defendants Leon J. Davis, individually and as president of Local 1199, Drug and Hospital Employees Union APL-CIO, both hereinafter referred to as Local 1199, cross-move for dismissal of the complaint for failing to state facts sufficient to constitute a cause of action against them and, further, upon the ground that a “ labor dispute ” is involved within the meaning of section 876-a of the Civil Practice Act and that the complaint fails to allege facts showing compliance with said section 876-a.
Defendants Peter Ottley, Peter Byrne and Local 144, Hotel and Allied Service Employees Union, B. S. E. I. U., APL-CIO, all hereinafter jointly referred to as Local 144, urge the court in the exercise of its sound discretion to refuse the issuance of a temporary injunction.
The salient facts are undisputed. Plaintiff is a voluntary, charitable institution providing a home and hospital for the aged infirin in several buildings at two locations in Brooklyn, sustaining a net annual operational loss approximately one-half million dollars, and is manned by 140 unpaid volunteer physicians and nonprofessionals and 600 paid employees, of whom 355 are unskilled or nonprofessional employees. It is this *504 latter group of unskilled nonprofessional paid employees for which each defendant rival union seeks to be recognized by the institution as sole collective bargaining representative. Each union claims to have as members some of those employees.
Plaintiff’s difficulties started on May 11,1959 when Local 144, claiming to represent a substantial number of employees, made a written demand for recognition 1 ‘ without the kind of disturbance and bitterness now being witnessed at other institutions.” On June 17, 1959, Local 144 carried on a four-hour strike and demonstration at the Howard Avenue building, causing a work stoppage and interference with the normal operation of the institution.
Local 1199 entered into competition with Local 144 by announcement made on September 17, 1959 of its intention to organize plaintiff’s employees and by April 5, 1960 expressed its position by demanding in a telegram addressed to plaintiff ‘ ‘ that no action should be taken in regards to recognition of any union other than Local 1199.”
Further developments on the same day, April 5,1960, included a repetition of a threat to strike made by Local 144 unless recognized by plaintiff, and the making by Local 1199 of a verbal threat to strike should the plaintiff take any action to recognize Local 144. On the following day, April 6, 1960, Local 144 led a one-hour demonstration in front of plaintiff’s premises with pickets carrying placards containing various legends, thereby causing some employees to leave their jobs.
Early in the morning of the next day Local 144 leaders accosted employees reporting for work and announced a work stoppage to take place that morning from 11:00 a.m. to 12:30 p.m. Representatives of Local 1199 were also present distributing their own literature. Joined by a number of employees Local 144 representatives did conduct a two-hour demonstration with picketing and signs witnessed by representatives of Local 1199. On April 8,1960, Local 144 representatives led a sit-down strike in the lobby of the main building at Howard Avenue, precipitating almost a complete work stoppage at that location and impeding pedestrian traffic through the entrance. The sit-down continued for two days accompanied by some picketing, with pickets carrying placards, and sporadic massing of Local 144 representatives in front of the premises. It is plaintiff’s contention, that persons were intimidated, employees frightened, and others prevented from entering and leaving the premises by such actions, necessitating the requirement and use of police protection, causing the curtailment of normal functions of the Home and Hospital, thereby constituí *505 ing a threat to the welfare of the aged residents and patients. Police were required to clear lines of traffic for other employees, volunteers, professional employees and visitors desiring to enter or leave the premises.
The sit-down strike did not terminate until several hours after service of the order to show cause herein on the evening of April 9, 1960.
It has been and is plaintiff’s position that, being a charitable institution, it cannot be compelled, as a matter of law, to enter into collective bargaining negotiations and that the purpose of defendant unions’ actions was to coerce plaintiff into recognizing one of them, in preference to the other, as collective bargaining representative.
The law is well established that plaintiff, being a charitable corporation, is specifically exempt from the obligation of participating in collective bargaining (Labor Law, § 715), since it is not engaged in any industry, trade, craft, or occupation within the purview of section 876-a (subd. 10, par. [b]) of the Civil Practice Act. (Jewish Hosp. of Brooklyn v. “ John Doe,” 252 App. Div. 581.)
Such strike, picketing, sit-down and other demonstrations and activities as have been depicted herein, occurring in an institution maintained for the aged infirm, can only serve to cause irreparable injury, if permitted to recur, and therefore must be prohibited pending the trial of the action. (See Society of N. Y. Hosp. v. Hanson, 185 Misc. 937, affd. 272 App. Div. 998; Beth-El Hosp. v. Robbins, 186 Misc. 506, 509.)
However, the court will allow peaceful picketing in such form as not to deter persons having business or professional relations with plaintiff from crossing the picket line and as not to interfere with plaintiff’s functions. (American Soc. for Prevention of Cruelty to Animals v. Geiger, 208 Misc. 29, 31; Young Women’s Christian Assn. v. Rubin, 18 Misc 2d 256.)
There remains for determination the question raised by Local 1199’s motion to dismiss the complaint for insufficiency. It is alleged in the complaint that unless plaintiff recognizes Local 1199 as collective bargaining agent, said local threatened to “picket and engage upon a course of conduct similar to that engaged upon by Local 144.” The threatened repetition of a course of conduct, conduct clearly inimical to plaintiff’s rights in the operation of the institution for the welfare of its many occupants, made by Local 1199 under the circumstances alleged, sufficiently states a cause of action against Local 1199.
In my opinion a threat to strike and demonstrate against a nonprofit charitable organization operating a home and hospital *506 for the aged infirm by a labor union actively engaged in rivalry with another union in seeking sole recognition as collective bargaining agent for the institution’s nonskilled employees, when the competing union has already conducted a work-stoppage, a sit-down strike and demonstrations, presently enjoined by the court, is actionable, especially when the institution as a charitable organization is expressly exempted by law from the obligation of participating in collective bargaining.
Plaintiff’s motion for temporary injunction is granted. Local 1199’s cross motion to dismiss the complaint is denied.
Settle order on notice to provide for picketing, making due allowance for the fact that two rival unions are involved, on condition that the picketing be peaceful and shall not interfere with the normal functioning of plaintiff institution and with its normal service to occupants and patients.