Louis L. Freedman, J.
Plaintiff, a charitable hospital, brings this action against the defendant union and others for an injunction restraining them from striking, picketing or otherwise interfering with the operation of the hospital operated by the plaintiff. By this motion the plaintiff seeks a temporary injunction, asserting that defendants are about to call a strike of the hospital employees and to commence picketing. The motion originally came on to be heard before this court during the month of February, 1962. At that time, at the request of defendant union, the court consented to hold a conference between the parties in an effort to adjust their differences. Further argument on the motion was postponed to a later date, the attention of the defendants at that time being directed to the injunction contained in the order to show cause signed by Mr. Justice Heller. At the request of one side or the other, and sometimes both, additional postponements of the motion were granted by the court to give the parties an opportunity to complete negotiations. Defendants’ counsel insisted that if such negotiations did not result in a final disposition satisfactory to both sides, that he desired a further opportunity to *1046 argue the legal questions presented, and the court agreed to hear such argument in the event that a decision on the motion became necessary. The last adjourned date was May 25, 1962, and the court was advised during the early part of that week that the parties would be ready for argument on that date.
Two or three days before the final return date, defendant union, in violation of the temporary restraining order issued by Mr. Justice Heller, called a strike of some of the hospital employees and thereupon commenced picketing. On the argument of this motion, the court was advised that pickets were parading adjacent to the hospital premises, that numerous acts of violence had occurred, including assaults upon policemen who were assigned to the vicinity for the purpose of maintaining order, and that it had become necessary to charge several of the strikers and/or pickets, as well as defendant Davis, with the commissions of various felonious acts. Such a strike was, of course, in complete violation of the order issued by Mr. Justice Heller hereinbefore referred to, and the attention of counsel for the defendants was called to the fact that such acts might very well be deemed to be contumacious. Defendants sought and were given additional time within which to serve a memorandum of law, and the court orally directed, in the presence of the defendant Davis and of counsel for all of the defendants, that such extension of time was granted upon the court’s assumption that picketing was going to stop. The court announced that in view of the additional time requested by and granted to defendants for the submission of legal memoranda, that the order of Mr. Justice Heller restraining picketing must be obeyed, and that in addition, the court would itself sign an interim order staying such picketing pending this court’s determination of the instant motion. Such an order was signed by the court on May 25, 1962, but the defendants nevertheless persisted in their violation of the injunction orders. A motion to punish defendants Davis, Godoff and Dubin for contempt of court was granted by this court and the order entered thereupon has been affirmed by the Appellate Division (Beth-El Hosp. v. Davis, 16 A D 2d 934, 935).
The foregoing points out the reasons why decision on this motion has been so long delayed. The merits of the motion must now be considered and determined.
The papers before the court point out that for several months prior to the institution of this action, the defendant union had been endeavoring to organize the nonprofessional employees of the plaintiff. Plaintiff is a voluntary, nonprofit, charitable institution, which has treated over 60,000 patients during the *1047 year 1960; and it employs approximately 850 persons, 400 of whom are nonprofessional workers. During the Spring of 1961 and continuing through the rest of that year and into the early part of 1962, defendant union stepped up its drive to enroll these nonprofessional workers as members of the defendant union, and one of the ways in which this was accomplished was by way of pamphlets which were handed out in front of the hospital and demonstrations staged in and about the hospital buildings. Some applications for membership were handed out to these workers as they entered the hospital to perform their duties, and numerous meetings were held in an effort to stir up plaintiff’s employees and antagonize them against the hospital. On April 6, 1961, one of the pamphlets so distributed stated that the plaintiff hospital was the number one target for organization of plaintiff’s employees. On December 3, 1961, during a fund-raising dinner held for and in behalf of the plaintiff, pickets paraded in front of the place where the dinner was being held, with resultant damage and embarrassment to the charitable endeavors of plaintiff hospital. On January 16, 1962, defendants distributed a strike vote leaflet and as a result a strike was called for February 12, 1962. This strike did not actually take place because of the order to show cause which is now before the court, and to which references have already been made.
Defendants have not moved to dismiss the complaint for insufficiency, but the affidavit in opposition does raise an issue as to whether the complaint sufficiently complies with the provisions of section 876-a of the Civil Practice Act. In its papers in opposition to the present motion, defendant union contends that this plaintiff hospital, despite the conceded fact that it is a charitable institution, is nevertheless subject to the provisions of that section. Plaintiff, on the other hand, contends that as a charitable institution it is not so subject to section 876-a of the Civil Practice Act, and the court now concludes that it is the interpretation of that section^' which must control the determination of this motion.
Setting aside for the moment the question of the alleged lawlessness of the actions of the defendants, plaintiff contends that unless said defendants are restrained in their activities and the continuation of the strike which is now in progress, other union employees of other unions will stop the delivery of food and vital medical supplies, and that the end result thereof will be a menace and a danger to those patients who are desperately in need of adequate medical treatment. Plaintiff contends that as a charitable institution it is not subject *1048 to the provisions of section 876-a of the Civil Practice Act, and therefore cannot be compelled as a matter of law to enter into collective bargaining negotiations with the defendants. Plaintiff further contends that the sole purpose of the actions of defendant union and others is to coerce plaintiff into recognizing this union as the collective bargaining representative of the plaintiff’s employees and that the strike which has been called is to carry out this coercive act.
Defendants, on the other hand, while conceding that by their activities they seek recognition as the collective bargaining representative of plaintiff’s employees, contend that they are acting solely for the purpose of obtaining improved terms and conditions of employment for the hospital employees, and that their object is in all respects laAvful. They further contend that a' bona fide labor dispute exists within the meaning of section 876-a of the Civil Practice Act, and that accordingly they have the right to strike and to picket the plaintiff’s hospital grounds.
On the argument of this motion defendants contended that despite prior decisions on similar cases by the appellate courts of this State, this court may nevertheless re-examine the question to ascertain whether under various authorities the plaintiff hospital is in fact carrying on an industry, trade, craft or occupation within the meaning of section 876-a of the Civil Practice Act, and whether by failing specifically to exempt charitable institutions such as this hospital, the Legislature intended that such institutions should be subject to that section. The precise question has already been passed upon by our appellate courts adversely to the contention raised by the defendants (Jewish Hosp. of Brooklyn v. “John Doe”, 252 App. Div. 581; Brooklyn Hebrew Home & Hosp. v. Ottley, 25 Misc 2d 502, affd. 13 A D 2d 786; Jewish Hosp. of Brooklyn v. Davis, 8 A D 2d 786; Society of N. Y. Hosp. v. Hanson, 185 Misc. 937, affd. 272 App. Div. 998; Mount Sinai Hosp. v. Davis, 17 Misc 2d 727). This court is bound by such determinations, and if the question is to be noAv re-examined, it is the appellate courts which must do so (Mount Sinai Hosp. v. Davis, 8 A D 2d 361, 363). In addition, the Court of Appeals has already passed on the question of the exclusion of charitable and educational institutions from the requirement that they enter into collective bargaining negotiations {Matter of Trustees of Columbia TJniv. v. Herzog, 269 App. Div. 24, affd. 295 N. Y. 605). The numerous authorities cited in the voluminous brief submitted in behalf of defendants are either distinguishable on their facts or presented questions other than those being here considered. In the *1049 face of the authorities cited, a denial by this court of the present motion would not only cause irreparable harm to the plaintiff and the public, but would be an abdication by the court of its own responsibilities. Under such circumstances, the strike must be prohibited pending the trial of this action (Brooklyn Hebrew Hosp. v. Ottley, supra; Society of N. Y. Hosp. v. Hanson, supra; Beth-El Hosp. v. Robbins, 186 Misc 506-509).
This court recognizes the fact that in granting injunctions such as these, peaceful picketing is sometimes permitted under restrictions provided for in the court’s order (Prospect Hgts. Hosp. v. Davis, 22 Misc 2d 511; Prospect Hgts. Hosp. v. Davis, 26 Misc 2d 762; Brooklyn Hebrew Hosp. v. Ottley, supra). If the defendants had not already shown a deliberate attitude of defiance toward the orders of this court and the rights of the patients and nonstriking workers in the hospital, some form of picketing would have been allowed as was done in the cases previously cited. But in addition to their defiance of the orders of this court, the evidence shows that their unlawful picketing has been combined with many acts of violence and attempted intimidation of hospital personnel and officials. The supplemental affidavit made by the executive director of plaintiff hospital on June 7,1962, shows that the pickets start at 5:30 o’clock in the morning and continue all day until 11 o’clock at night, and that many patients have been endangered in their health and well-being. Defendant Davis has himself marched in the picket line and on May 30, 1962, despite the fact that he was held in contempt by the court the day before, he returned to the picket line in defiance of this court’s order. In addition, the number of pickets on the line has increased from approximately 50 to 150. Up to the time when the motion came on to be heard, there were numerous arrests of Davis and other persons on the picket line for alleged criminal activities, including the alleged commissions of several felonies. As previously stated, assaults have been made upon police officers, and it was stated upon the argument that one policeman’s uniform was torn by several of the pickets.
Following the argument of the motion, there have been additional acts of criminality. On June 2, 1962, one picket was arrested for disorderly conduct. The following day, it is alleged that five pickets threw stones at and damaged the hospital’s station wagon and injured its driver, following which they were arrested for disorderly conduct and malicious mischief. Again the following day, in addition to the picketing by their own members, defendants secured the aid of another local in massing several hundred additional pickets in front of the hospital, thus *1050 creating an even greater disturbance. Again, the following day, on June 5, 1962, 24 persons calling themselves “ Freedom Eiders ” marched into the hospital at 2:30 p.m. and refused to leave until 9 o’clock that night, and while there, violated hospital regulations and city ordinances against smoking, noise-making and other disturbances. After remaining in the hospital for this period of almost seven hours, these persons were arrested because of their refusal to leave. In addition, at 9:30 p.m. on the same day, nine pickets are alleged to have continuously screamed in front of the hospital and thus disturbed many patients, as a result of which they were arrested for disorderly conduct. The following day, on June 6,1962, the picketing continued from 5:30 a.m. to about 11 o’clock at night. Again, on the day following to wit: June 7, 1962, the tires on several automobiles owned by nonstriking workers were slashed, and the windows of another such car were smashed, while they were all parked in the vicinity of the hospital. In addition, five employees of the hospital have complained that they were followed home by members of the union and on one occasion, one of such union members was arrested after breaking into the employee’s home. The hospital also contends that it has become necessary for them to pick up their meat and groceries and other supplies, because those attempting delivery to the hospital have been intimidated and thus prevented from crossing the picket lines.
All of these are acts of lawlessness which the court may not countenance, and under such circumstances it will be a futile gesture to direct that peaceful picketing be allowed, when the actions of the defendants have already demonstrated that the picketing will not, in fact, be peaceful.
This court sympathizes with the plight of any employees whose working conditions, wages or other returns from their employment are not up to standard. Whether that is so with the workers of this hospital has not been gone into on this motion since the question presented before this court is one of law. The hospital, in the affidavit submitted under date of May 24, 1962, by Morrell Goldberg, its executive director, points out that since June, 1959, there has been in existence a committee known as the permanent administrative committee and that the purpose of this group has been to supervise a program of wage increases and working conditions for nonprofessional hospital employees in the City of New York. This committee consists of 12 members, 6 of whom are hospital trustees named by the Greater New York Hospital Association, and the other 6 of whom are representatives of the public designated by the *1051 Chief Judge of the Court of Appeals of this State. In an amended statement of policy submitted to Mayor Wagner on June 29, 1960, the membership of said committee was reconstituted so that the 6 representatives of the public were people who were not associated with either hospitals or labor. In addition, 2 supervisory groups without voting privileges were added, representing voluntary hospitals and labor. It is the function of this permanent administrative committee under the amended statement of policy referred to, to annually review job grades, wage ranges, fringe benefits, seniority rules, and personnel policies prevailing in those hospitals subscribing thereto, and to recommend improvements where the committee deems it necessary to do so. The affidavit of Mr. Goldberg points out that by unanimous vote of the board of trustees of this plaintiff, it has subscribed to the said amended statement of policy through a letter dated February 7,1962, which appears as Exhibit A annexed to the said affidavit of Mr. Goldberg. Acknowledgement of this plaintiff’s subscription to the said plan or program appears in the other exhibits attached to that affidavit. Despite the hospitals’ announced intention to examine the working conditions, wages and other benefits of the nonprofessional workers in plaintiff’s hospital, defendants persist in their strike and in their acts of lawlessness. Laudable as ■ their ultimate objectives may be, and assuming the truthfulness of their statements that they are attempting to further the interests of the hospital employees rather than merely the interests of the union, they may not achieve such objectives by unlawful and illegal means.
The motion made by the plaintiff is in all respects granted.