John F. Cohalan, Jr., J.
Plaintiff, a voluntary, general, nonprofit hospital, has brought on a motion, by order to show cause, to obtain a temporary injunction to restrain a threatened strike allegedly instituted by the defendants individually and as officers of Local 1199, Drug and Hospital Employees Union, AFL-iCIO (hereafter Local 1199). A summons and verified complaint form part of the moving papers.
A temporary restraining order, contained in the order to show cause, enjoins, inter alia, preliminary preparations on the part of the defendants looking to the calling of a strike.
The defendants oppose the application and by cross motion have moved to dismiss the complaint (CPLE 3211, subd. 7) for failure to state a cause of action.
Southside Hospital (hereafter Hospital) in Bay Shore, Suffolk County, New York, has over-all facilities for about 300 patients of all types. It is nearly self-sufficient in its operation, with a pharmacy, a dietetic staff and a cafeteria on the premises, in addition to all the customary medical and surgical requirements.
Not including medical staff members, it has upwards of 400 employees.
Local 1199, as a trade union, has been organizing the hospital’s employees in the recent past, and has manifested a desire to confer with the hospital’s board of trustees in an effort to be recognized as a collective bargaining agent so that it may discuss wages and working conditions.
In the face of numerous decisions to the contrary, among which are cited Brooklyn Hebrew Home v. Ottley (25 Misc 2d 502, affd. 13 A D 2d 786, app. dsmd. 11 N Y 2d 884); Beth-el Hosp. v. Davis (34 Misc 2d 1045); Hebrew Home & Hosp. v. Davis (38 Misc 2d 173) and Prospect Hgts. Hosp. v. Davis (22 Misc 2d 511), Local 1199 advances the claim that there exists a labor dispute in this instance, pursuant to section 807 of the Labor Law (formerly Civ. Prac. Act, § 876-a). To buttress its argument attention is called to a recent amendment to section 701 of the Labor Law (added subd. 11, eff. July 1, 1963): “ The term ‘ non-profit- *799 making hospital or residential care center ’ means an organized residential facility for the medical diagnosis, treatment and care of illness, disease, injury, infirmity or deformity which is located in a city having a population of one million or more and which is maintained and operated by an association or corporation, no part of the net earnings of which inures to the benefit of any private sharesholder or individual.”
Conceding that in the past all nonprofit hospitals have not been considered as falling within the prohibition of section 807 of the Labor Law, and its predecessor, section 876-a of the Civil Practice Act, it argues that the exemption previously existing in favor of hospitals not covered by the amendment, has been abolished. This conclusion is arrived at on the theory that since this type of hospital is specifically exempted in cities of one million or more it necessarily excludes from its application all such hospitals in other communities.
When the amendment was passed affecting New York City (the only municipality which can qualify in the one million or more class) an alternative means of bargaining was established by the State Legislature which permits the State Board of Mediation to arbitrate grievances (Labor Law, § 716). No such provision applies outside the city. Ergo, says Local 1199, such hospitals are amenable to strike action.
Examining the argument it is again to be noted that prior to July 1, 1963, no one in the city, in the suburbs or in the rural districts could strike in such a situation. Now by legislation, an area containing approximately 50% of the State’s population has been given an alternative method of obtaining relief.
The remainder of the State has been left as before.
If any inference is to be drawn from the passage of the amendment it is that the hospital workers in the city have gained an advantage and all the others have maintained the status quo ante. Thus, the cases cited above continue to have application outside the City of New York.
Local 1199 asserts the inhibition to be a violation of the 13th Amendment to the United States Constitution which forbids involuntary servitude. Is the hospital laborer outside the city now reduced to peonage; is he a worker who has no rights an employer is bound to respect? Not so. He can still resign and work elsewhere, where the stringent regulations do not apply.
Why the Legislature should, in effect, have preferred the New York City dweller over his country cousin is a matter of surmise and speculation.
*800 Perhaps it is because until now, the threatened strike of such facilities has been confined to New York City and no thought of having such episodes in the hinterlands has occurred to anyone in authority. Certainly, to paraphrase the bard, all of the non-city dwellers are of the same fabric and texture. If you prick them, they will bleed; if you poison them they will die, just as would their city relatives in similar fix. In view of the obvious fact that the city has rapid transit facilities not enjoyed elsewhere, a larger labor market, a numerical superiority of doctors and all the multifarious physical attributes which give the urban dweller the advantage over the rural resident in matters dealing with materia medica, it would seem that the law would first be applied to that part of the State outside New York City rather than within.
In any case we must deal with the law as we find it. Special statutes such as this, dealing with specific municipalities and excluding others, are no stranger to the law, and have been held constitutional. This one is no exception.
If the foregoing were the sole criteria to be employed in reaching a decision then, based on case law, the court would have no hesitancy in continuing the restraining order and granting the temporary injunction requested. We must, however, search the complaint to ascertain if it is sufficient and timely or merely conclusory and premature.
The gravamen of the complaint is contained in the 14th paragraph. After relating factual matters and statistics in preceding allegations concerning the operation of the hospital, with a mention of a leaflet calling for a strike vote, it then states that as a result “ the essential functions and operations of plaintiff hospital could be seriously disrupted and dangerous and irreparable injury could be caused to the health and well-being of plaintiff’s patients ” (italics supplied).
“ Could be ” is a conjectural phrase. Many circumstances that may never eventuate “ could be ”, To date, as far as has been shown, no violence has attended the hospital scene. There has been no unseemly noise, no work stoppage, no sit-down, no attempt to curtail deliveries to the hospital, nothing, in fact save a meeting which was held and at which a vote in the nature of an enabling act was taken to give the union the go-ahead signal to call a strike if warranted. Thus, nothing so far has been shown to the court that there exists a clear and present danger to the plaintiff to justify granting the drastic relief now sought.
The factual situations in the cases cited above indicate a planned violence and all the elements of threat and attempted coercion which are absent from the present picture.
*801 Accordingly the cross motion to dismiss the complaint is granted, with leave accorded to the plaintiff to amend, if so advised, within 10 days after service of an order to be entered herein, with notice of entry; the temporary restraining order is vacated and the motion for the temporary injunction is denied with leave to renew either or both if conditions warrant.