George Tilzer, J.
Plaintiff, a voluntary nonprofit hospital, moves for a temporary injunction restraining the defendants’ union from continuing the strike and work stoppage it has organized among the plaintiff’s employees and from otherwise interfering with and disrupting the essential operations and services performed by the plaintiff hospital. The plaintiff, a New York membership corporation, is one of the largest voluntary hospitals in the Greater City of New York. Generally, it is a nonprofit hospital operating solely for the public benefit. It is devoted to the care and treatment of the sick and injured and is operated on a nonsectarian basis for the benefit of the entire public, including those who are unable to pay for such care and medical attention. It is also licensed as a general hospital to receive and treat indigent sick persons sent by the Welfare *728 Department of the City of New York. At the present time there are approximately 900 patients housed within the hospital, many who are seriously ill and injured and who would suffer death or permanent disability unless they received prompt attention.
This case involves the serious problem as to whether the defendants’ union, under the circumstances herein set forth, may engage in a strike which interferes with the essential operations of the plaintiff hospital.
A strike which adversely affects the essential functions of a hospital maintained for the benefit of the community, without regard to a patient’s ability to pay, is against public interest and consequently must be enjoined. (Society of New York Hosp. v. Hanson, 185 Misc. 937, affd. 272 App. Div. 998; Jewish Hosp. of Brooklyn v. “ John Doe ”, 252 App. Div. 581; Beth-El Hosp. v. Robbins, 186 Misc. 506.)
The exigencies of this case prompt the court to merely set forth controlling decisions, above cited, which it regards as well-established law. In the ease of Jewish Hosp. of Brooklyn v. “ John Doe ” (supra), the court said (pp. 583-584):
‘1 The sole question to be determined is: Does a charitable corporation such as plaintiff come within the purview of the statute (Civ. Prac. Act, § 876-a) ? We believe, even though the statute does not expressly exempt charitable corporations, that the Legislature never intended it to apply to an institution such as plaintiff. While those involved in a labor dispute, as defined by the statute, need not stand in the relation of employer and employee, they must be engaged in the same ‘ industry, trade, craft or occupation. ’ These words connote and emphasize one common thought, to wit: that the parties to the controversy shall be engaged in the same business enterprise or commercial pursuit, one motivated by the desire for profit, the other by the desire to earn a livelihood. Plaintiff is not thus engaged, nor are its sponsors or supporters moved by any selfish or pecuniary consideration. Plaintiff’s function primarily — perhaps exclusively — is charitable; to care for the sick and disabled and to relieve their suffering and distress whether they are or are not able to pay for the service they receive. While some patients pay, most are unable to do so; and during the last several years the voluntary contributions plus the city’s payments have been insufficient to meet the operating expenses. Obviously plaintiff is not engaged in any industry, trade, craft or occupation for profit within the meaning of the statute.
* * *
‘ ‘ Plaintiff, in caring for the indigent sick, is discharging, at least in part, a function which ordinarily devolves upon the *729 government. The city sends to it ‘free patients,’ for whose treatment it is only partly reimbursed by the city. To the extent that it renders such service plaintiff is in fact, if not in name, a governmental agency performing a governmental function which ordinarily belongs to and usually is discharged by the State. (Corbett v. St. Vincent’s Industrial School, 177 N. Y. 16; Hughes v. County of Monroe, 147 id. 49.) The instant statute, which is clothed in general language, is designed to effect a reform in procedure pertaining to the issuance of injunctions in labor litigations. The same doctrine that excludes the State and its political subdivisions from the statute requires a holding that a charitable institution such as plaintiff is also excluded.”
In the case of Society of New York Hosp. v. Hanson (supra), the court said (pp. 942-943):
‘ ‘ At common law, well established in this State before the passage of article 20 of the Labor Law, the right to strike was fully recognized as one of the most valuable possessions of labor. Our courts have properly refused to enjoin workers from striking or organizing for the purpose of striking, despite such damage as might incidentally ensue to the property of those affected. In exercising this equitable function, however, the courts have been careful to protect both property and lives from strikes called to achieve improper results or which were violently conducted (Opera on Tour, Inc., v. Weber, 170 Misc. 272, affd. 285 N. Y. 348; Exchange Bakery & Restaurant, Inc., v. Rifkin, 245 N. Y. 260).
“ It is the court’s duty in each case to determine the purposes and objectives which workers embraced in the categories enumerated in section 715 may lawfully attempt to achieve by striking. In so doing the court must weigh the public interest against that to be served by allowing such workers to obtain fair treatment through the utilization of those economic weapons which are available to them. The right to strike has proven to be of such proper potency to labor in our industrial history that this court would not curtail it in any respect except for the most impelling of reasons. But there are some contravening considerations which can be of even greater importance to the public interests as a whole. It is difficult to conceive of a public service of greater value than the maintenance of hospitals for the care of the sick and the injured. It is almost impossible to conceive of such hospitals functioning properly if they are subject to interference with their activities by strikes or otherwise. Obviously ministration to the sick cannot be delayed. Surgical operations, as well as the routine care of those requiring medical *730 attention, must "be permitted to proceed at all times. The effective strength of medicines and serums must be preserved continuously under scientific conditions. The frantic immediacy which is required for the treatment of emergency cases, cannot be suspended while awaiting the outcome of parleys between the hospital management and its employees over terms of labor. These elements imperatively command that the generally broad right to strike be enjoined or otherwise limited in such cases.”
Counsel for the defendants concedes that these cases have not been reversed and that there is no case directly overruling the same. However, they urge that this court should not follow these precedents of the higher courts. The cases on which the defendants rely are cases which do not affect voluntary nonprofit hospitals. They concern private industry for pecuniary gain. The great triumphs which labor has won in the past two decades from our courts are related solely to private industry as distinguished from voluntary nonprofit hospitals. Where the fields of endeavor directly involve the public welfare and safety, the individuals engaged therein are not possessed of the right to strike for the purpose of increasing their wages or improving their working conditions or for the purpose of unionization or collective bargaining.
Labor’s right to strike in order to attain its legitimate objectives is of course well recognized in our law. Nevertheless, it is not an unlimited and unrestrained right but must give way to the ever paramount consideration of public interest and public welfare. The basic reason for the establishment of this public policy, from which there has never been any deviation, is that the voluntary, nonprofit hospitals care for the sick and the injured, involving the very preservation of life itself. As the courts have pointed out, the Legislature has recognized this public policy. The courts, as part of their obligation under the common law, recognize it and enforce it. Indeed, it is interesting to note that three separate bills were introduced in the Legislature at the 1959 session which sought to require charitable hospitals to deal with unions representing their employees. However, none of these bills was enacted into law.
This is hardly the time to weaken the public policy with regard to nonprofit voluntary hospitals so firmly entrenched in the law. Since the employees are not engaged in industry and are in an area where a strike or a threat of a strike is a direct threat to the public interest and welfare, labor’s right to strike may not be exercised. This does not mean that such employees may not seek to better the terms and conditions of their employment. They are merely deprived of their right to strike and relegated *731 to such other means as may be available which do not endanger the public health or safety or are not detrimental to the public interest. Accordingly this court feels compelled to grant this application. I find that the strike and the threat of strike would endanger public health and safety and would be detrimental to the public interest, an injunction will therefore issue restraining the defendants during the pendency of this action from calling, instigating or continuing any strike or strike activity against the plaintiff. Immediate trial is in order.
Settle order.