Donald Peters, et al., Plaintiffs-Appellees, v. South Chicago Community Hospital, et al., Defendants-Appellants, and
Donald Peters, et al., Plaintiffs-Appellees, v. Norwegian-American Hospital, et al., Defendants-Appellants.

Gen. Nos. 52,946, 52,947.

First District, Third Division.

March 27, 1969.

Robert W. MacDonald, William B. Hanley, and Murray B. Woolley, of Chicago (MacDonald & Hanley and Elmer E. Abrahamson, of counsel), for appellants.

Lester Asher, Benjamin L. Jacobson, and Marvin Gittler, of Chicago (Asher, Greenfield, Gubbins and Segall, of counsel), for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

The issues involved in these two cases are in substance identical and we have consolidated the cases for hearing on appeal. On a previous appeal (Peters v. South Chicago Community Hospital, 92 Ill App2d 37, 235 NE 2d 842), this court held that the trial court could not order the defendant hospitals to recognize and bargain with the plaintiff union. The issue now before us is whether the cross-petition of the defendants seeking an injunction to restrain members of the plaintiff union from striking or picketing the hospital premises was properly denied. A statement with respect to the issues on the first appeal is essential to an understanding of the issues presently involved.

Plaintiffs are officers of the Hospital Employees Labor Program (HELP). HELP is a labor union formed and sponsored jointly by the General Service Employees Union, Local 73, Building Service Employees International Union, and Local 743, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Defendants are hospitals chartered under the Illinois General Not-for-Profit Corporation Act.

Plaintiffs brought two separate class actions on behalf of themselves and members of the union. They sought injunctions against the hospitals to restrain them from intimidating and/or coercing their respective employees with regard to union membership and activity and to compel the hospitals to meet with union representatives for the purpose of negotiating and entering into a collective bargaining agreement. The hospitals filed cross-petitions for a declaratory judgment and an injunction restraining plaintiffs from striking or picketing the defendant hospitals. At the close of the first hearing on February 15, 1967, the court entered duplicate orders granting temporary injunctions, both prohibitory and mandatory, as follows:

"A. The parties shall meet forthwith for the purpose of selecting an impartial person or agency to supervise and conduct an election to determine whether a majority of the employees of defendant employed in the following capacities desire to be represented by plaintiffs for collective bargaining purposes and the parties shall participate in such an election:

"Licensed practical nurses, nurses aides, orderlies, ward clerical employees, assistant unit managers, laboratory attendants, medical and X-ray technicians, occupational, inhalation and physi-

cal therapists, pharmacy helpers and employees in the housekeeping, maintenance and food service departments.

"B. The parties have an equal right to communicate with the said employees of defendant to attempt to persuade them to join to support the Union or vote in favor of collective representation by plaintiffs or to refrain from so doing.

"C. The parties shall not intimidate or coerce said employees in any manner or by any means whatsoever in connection with their right to join or support the Union or to vote in favor of collective representation by plaintiffs or to refrain from so doing.

"D. Pending further order of this Court, plaintiffs shall not engage in or authorize picketing or a strike of the hospital premises involved herein."

On appeal we reversed as to Paragraphs A, B and C of the order, but with respect to Paragraph D made no decision because its validity was not then contested. On the hearing following the reversal the trial court vacated Paragraph D over the objection of defendant hospitals, and the sole issue now before this court is the right of the employees involved to strike and picket the hospitals. It is from that order that defendants now appeal.

Defendants' first contention is that plaintiffs failed on the occasion of the prior appeal to file a cross-appeal contesting that portion of the original order known as the "no-strike, no-picketing portion of the injunction" (Paragraph D) and thereby waived the point and are bound by the original no-strike, no-picketing injunction. The two cases defendants cite, Muren Coal & Ice Co. v. Howell, 217 Ill 190, 75 NE 469, and Jackson v. Glos, 249 Ill 388, 94 NE 502, are clearly distinguishable. In both cases the court held that an appellant may not urge

463

as error that which he failed to assign as error in a previous appeal with respect to the same issue. In the instant case plaintiffs are not challenging the correctness of the trial court's original order. Rather, they as appellees are defending the propriety of the court's subsequent order which vacated Paragraph D of the prior order after other portions on which Paragraph D was conditioned had been reversed on appeal.

██ ██ Moreover, the original order of the trial court which granted the *temporary* injunction was based on the pleadings. Such an order is provisional in character and may be vacated at any time at the discretion of the chancellor. 21 Ill Law and Practice, Injunctions, §§ 132, 137; Ar-Tiks Systems, Inc. v. Lark Sales Co., 12 Ill App 2d 304, 139 NE2d 308. The failure of plaintiffs to file a cross-appeal contesting the validity of that part of the order is not a bar to the trial court's subsequent vacation of the order.

We proceed to consideration of defendants' second contention, that the orders vacating the no-strike, no-picketing portions of the injunctions are erroneous as a matter of law. They argue that as applied to not-for-profit hospitals, strikes and peaceful picketing, having for their purpose the pressuring of the hospitals into recognition of the union as the representative of its employees, are contrary to public policy and that the Anti-Injunction Act (Ill Rev Stats, c 48, § 2a (1967)) does not prohibit the issuance of an injunction against such a strike. The union contends that the Anti-Injunction Act applies to privately owned hospitals, even though they are not-for-profit corporations, and that the public policy of the State is to permit peaceful picketing and strikes where public employment is not involved.

The Anti-Injunction Act prohibits the issuance of injunctions in any case involving disputes concerning the conditions or terms of employment to enjoin persons from

ceasing to perform any work or labor or from peaceably and without threats or intimidation persuading others to do so or from being on any public street for the purpose of obtaining or communicating information or peaceably persuading others. Ill Rev Stats, c 48, § 2a (1967). Stated broadly, the Act prohibits the issuance of injunctions against peaceful picketing or strikes.

█ An exception prevails when the purpose of the picketing or strike is illegal because it violates a statute or public policy. Cielesz v. Local 189, Amalgamated Meat Cutters and Butcher Workmen of North America, 25 Ill App2d 491, 167 NE2d 302; East St. Louis Retail Druggists' Ass'n v. Local 676-D, A. F. of L. Retail Clerks International Ass'n, 3 Ill App2d 325, 122 NE2d 66; Bitzer Motor Co. v. Local 604, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, 349 Ill App 283, 110 NE2d 674.

The question for determination is whether a peaceful strike and picketing directed against a not-for-profit hospital is illegal as being contrary to public policy. The answer lies in balancing two conflicting principles of public policy. On one hand is the right of employees to organize and picket or strike with a view toward obtaining higher wages and better working conditions. On the other hand, not-for-profit hospitals provide a vital service to the community by ministering to the needs of the sick and injured, which needs are immediate and should not be interrupted or delayed. The employees involved range from X-ray technicians and physical therapists to janitors and kitchen help, that is, practically all hospital employees except registered nurses and doctors. We have found no Illinois decision which has considered the issue as it relates to hospitals. However, the Supreme Court of our State has held that the proper and efficient educa-

tion of children is an overriding public interest of such importance as to transcend the right of custodial workers to strike or picket a public school. Board of Education of Community Unit School Dist. No. 2 v. Redding, 32 Ill2d 567, 207 NE2d 427. Sound health and life are also important to a community.

The rights of those who labor must be respected, but the operation of a hospital involves a public interest of such urgency that labor's right to strike must yield to the greater importance of the uninterrupted and efficient operation of hospitals, and a number of courts have so held. Mount Sinai Hospital, Inc. v. Davis, 17 Misc2d 727, 188 NYS2d 338; Society of New York Hospital v. Hanson, 185 Misc 937, 59 NYS2d 91, affd 73 NYS2d 835; Western Pennsylvania Hospital v. Lichliter, 340 Pa 382, 17 A2d 206; St. Luke's Hospital v. Labor Relations Commission, 320 Mass 467, 70 NE2d 10; St. Luke's Hospital v. Industrial Commission of State of Colorado, 142 Colo 28, 349 P2d 995.

In Mount Sinai Hospital v. Davis, supra, the court said (p 342):

> Labor's right to strike in order to attain its legitimate objectives is of course well recognized in our law. Nevertheless, it is not an unlimited and unrestrained right but must give way to the ever paramount consideration of public interest and public welfare. The basic reason for the establishment of this public policy, from which there has never been any deviation, is that the voluntary, non-profit hospitals care for the sick and the injured, involving the very preservation of life itself."

In Society of New York Hospital v. Hanson, supra, the court said (p 96):

> "The right to strike has proven to be of such proper potency to labor in our industrial history that this

court would not curtail it in any respect except for the most impelling of reasons. But there are some contravening considerations which can be of even greater importance to the public interests as a whole. It is difficult to conceive of a public service of greater value than the maintenance of hospitals for the care of the sick and the injured."

Similarly, in St. Luke's Hospital v. Industrial Commission of State of Colorado, supra, the court said (p 999):

"Employees of a hospital, whether professional or non-professional, enjoy an employment status quite unlike most other employment relationships. Hospitals are dealing with persons who are third parties to the employees, and these third parties have by reason of circumstances a particular call on the solicitude of everyone connected with the operation of the hospital. Much of the labors of the hospital involve emergency and crisis; minutes of action may mean the difference between survival and death. To vest any organization with the power to imperil efficient operation of such an institution is to give a power which no organization should want, or having, should exercise."

The rationale and considerations of public policy hereinbefore stated are applicable to the issues now before us.
■ A strike by employees such as those here involved would unquestionably have a calamitous effect on the operation of a hospital. In addition to routine care of those requiring medical attention, emergency operations must be arranged. The effective strength of medicines and serums must be continuously preserved under scientific conditions. Meals and special diets must be prepared and served on regular schedules and a host of other

functions must be performed. It is our conclusion that the trial court erred in vacating that portion of the order which restrained the union from striking defendant hospitals.

██ We proceed to consider that part of the order which relates to picketing. There can be no doubt that picketing, even when peaceful, can produce an effect which would impede the normal operation of a hospital and in such case must be enjoined. In the case previously cited, Board of Education of Community Unit School Dist. No. 2 v. Redding, 32 Ill2d 567, 207 NE2d 427, the court held (p 574) :

> "While picketing has an ingredient of communication, the cases make it clear that it cannot be dogmatically equated with constitutionally protected freedom of speech, and that picketing is more than free speech because picket lines are designed to exert, and do exert, influences which produce actions and consequences different from other modes of communication. (Hughes v. Superior Court of California, 339 US 460, 94 L ed 985; International Brotherhood of Teamsters, Local 309 v. Hanke, 339 US 470, 94 L ed 995.) Indeed, these by-products of picketing which go beyond free speech are self-evident in this case. It is now well established that the latter aspects of picketing may be subject to restrictive regulations. . . ."

In that case school operations were impeded when truck drivers refused to cross picket lines to deliver essential supplies.

The obstructive by-products of picketing, as described in the Redding case, supra, are not present in every case however and in their absence, picketing should not be

enjoined. City of Rockford v. Local No. 413 Int. Ass'n of Firefighters, 98 Ill App2d 36, 240 NE2d 705. In that case the court upheld an injunction restraining a strike by city firemen, but held that "picketing does not of itself contain an inherent threat to public safety and absent proof of actual interference with governmental functions should not be subject to a temporary injunction." In the instant case there is no evidence that picketing would impede the routine operations of the hospitals and the court properly vacated its injunction restraining such picketing. If the union does in fact picket and it is shown that such picketing impedes the operation of the hospitals, an injunction should issue to restrain the picketing entirely or to confine it to such precise limits as will not interfere with the operation of the hospitals.

The order is reversed and the cause is remanded with directions to enter an order prohibiting the plaintiffs from engaging in or authorizing a strike and for such other and further proceedings as are not inconsistent with the views herein expressed.

Order reversed and cause remanded with directions.

SULLIVAN, P. J. and DEMPSEY, J., concur.