(No. 42506.—

THE BOARD OF EDUCATION OF THE KANKAKEE SCHOOL DISTRICT No. III, Appellee, *vs.* KANKAKEE FEDERATION OF TEACHERS LOCAL No. 886 *et al.*, Appellants.

*Opinion filed Sept. 22, 1970.—Rehearing denied Dec. 3, 1970.*

440

LIGHTENBERG, DE JONG & LEAHY, of Chicago, (AN-
DREW J. LEAHY, of counsel,) for appellants.

EDWARD P. DROLET of Kankakee, for appellee County
of Kankakee EDWIN W. SALE, of Kankakee, for appellee
Board of Education of Kankakee School District.

Mr. JUSTICE CULBERTSON delivered the opinion of the
court:

Defendants, who are a teachers' union, and certain of its
officers and members, were convicted of criminal contempt
for wilfully failing to comply with a temporary restraining
order issued against them by the circuit court of Kankakee
County. A fine of $12,000 was levied on the union while
lesser fines, and in some instances jail sentences of 60 days,
were meted out against the individual defendants. They
have appealed, raising constitutional questions which serve
to invest us with jurisdiction to entertain a direct appeal.

During the month of April, 1969, the Kankakee Federa-
tion of Teachers Local No. 886 and the Board of Education
of Kankakee School District No. 111 were engaged in con-
tract negotiations. After ineffectual meetings and cor-
respondence, which nonetheless left the door open for
further negotiations, the union dispatched a telegram to the
Board president on April 25, shortly after midnight, advising
him that the membership had voted "to withhold teaching
services beginning Friday, April 25, 1969, until satisfactory

agreements on a new contract and other matters are reached." Later in the morning, when the time for school to start arrived, the majority of the teachers were on strike and many of them picketed at the schools. As a consequence, all but one of the Board's fifteen schools were unable to operate. It may be stated at this time that such a strike by school employees was unlawful as being in violation of the expressed public policy of this State. See: *Board of Education of Community Unit School District No. 2* v. *Redding* (1965), 32 Ill.2d 567.

Because of the statute requiring a 24-hour public notice to be given prior to a special meeting, (Ill. Rev. Stat. 1967, ch. 102, par. 42.02,) the Board could take no official action until Saturday, April 26. A meeting was held the latter date and after its conclusion in late afternoon, an attorney for the Board presented a complaint to a judge of the circuit court, properly supported by affidavit, praying for a temporary injunction, without notice or bond, restraining defendants from striking and picketing, and from inducing or encouraging others to do so. (See: Ill. Rev. Stat. 1967, ch. 69, par. 3—1). In substance, and patterned to a degree after the decision in *Redding,* the complaint alleged that the strike was in violation of the declared public policy of this State and therefore unlawful; that it had interrupted the operation of schools causing immediate and irreparable damage to the public; and that it prevented the Board from fulfilling its constitutional duty to provide the district with a thorough and efficient system of free schools. No prior notice was given defendants, nor was there an attempt to do so, and, at 5:45 P.M. a temporary restraining order was entered granting the relief prayed. By 8:30 P.M. of the same day, Saturday, April 26, the sheriff had served the temporary restraining order on all but one of defendants, and he was served the following day.

On Monday, April 28, the teachers continued to strike and picket. No effort was made by defendants to vacate or

dissolve the restraining order, or to otherwise seek judicial relief with respect thereto. On the same day the Board filed a motion for a preliminary injunction in accordance with sections 3 and 3—1 of the Injunction Act, (Ill. Rev. Stat. 1967, ch. 69, pars. 3 and 3—1,) which was set for hearing on Friday, May 2. Defendants appeared at the hearing but filed no pleadings, presented no evidence and in no manner sought to attack the legal basis for either the temporary order or the preliminary injunction. The latter injunction was issued but, as in the case of the temporary restraining order, defendants ignored it. As we interpret the record, the strike continued and the schools remained closed until May 12, the date upon which the trial court ruled on the evidence and found defendants in contempt.

Pursuant to a petition filed by the Board on April 29 an order entered on that date directed defendants to appear and to show cause why they should not be held in contempt and punished for disobeying the temporary restraining order. Hearing on the matter was held Monday, May 5, and on this occasion defendants filed a motion to dismiss the contempt proceedings. As grounds therefore it was alleged that the issuance of the temporary restraining order without notice or hearing deprived defendants of due process of law, and that both the petition for a rule to show cause and the order entered thereon were so vague, indefinite and uncertain as to violate the requirements of due process. The motion was denied and, after hearing evidence on both sides, the court found certain of the defendants in contempt and imposed fines and sentences as heretofore related. As to two of the individual defendants, however, the evidence was found to be insufficient to show that they had violated the restraining order and the rule to show cause was dismissed as to them. In this regard, the defendants appealing do not challenge the sufficiency of the evidence to support their convictions.

To obtain a reversal defendants rely principally on *Car-*

roll v. *President and Commissioners of Princess Anne* (1968), 393 U.S. 175, 21 L. Ed. 2d 325, 89 S. Ct. 347. In that case, during the day of August 7, 1966, officials of the town of Princess Anne obtained an *ex parte* restraining order to prevent a public rally scheduled for that night by members of a "white supremacist" organization. Inflammatory speeches made at a similar rally the night before had created a tense atmosphere, and the order restrained the persons involved for 10 days from holding meetings or rallies in the county "which will tend to disturb and endanger the citizens of the county." The order was served on some of those affected by 6:10 P.M., (a circumstance which caused the court to conclude that notice of the application for the order could just as easily have been served,) and, in obedience thereto, the rally was cancelled. After a trial, an injunction was issued on August 31, 1966, which had the effect of extending the restraint for an additional 10 months. An appeal was prosecuted to a State court, and thereafter the United States Supreme Court entertained a petition which sought review of the 10-day order. Approaching the problem presented from the concept that "Prior restraint upon speech suppresses the precise freedom which the First Amendment sought to protect against abridgment" (393 U.S. at 181, 21 L. Ed. 2d at 331, 89 S. Ct. at 351,) the court found the restraining order to have been improper, stating: "The 10-day order here must be set aside because of a basic infirmity in the procedure by which it was obtained. It was issued ex parte, without notice to petitioner and without any effort, however informal, to invite or permit their participation in the proceedings. There is a place in our jurisprudence for ex parte issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to

participate." 393 U.S. at 180, 21 L. Ed. 2d at 330, 89 S. Ct. at 351.

Inasmuch as the order in the instance case restrained defendants from picketing, which defendants see as the precise legal equivalent of free speech, it is contended that the same basic infirmity in the procedure by which the order was obtained requires it to be set aside and the contempt convictions held for naught. But we believe it clear that *Carroll* is inapposite, and of no persuasion here.

We are not dealing with a prior restraint, nor was the trial court, when asked to issue the temporary restraining order, confronted with a constitutionally protected area of free speech. Picketing, while a mode of communicating ideas, is not dogmatically equated with constitutionally protected speech, (*Hughes* v. *Superior Court of California,* 339 U.S. 460, 94 L. Ed. 985, 70 S. Ct. 718; *International Brotherhood of Teamsters, Local No. 309* v. *Hanke,* 339 U.S. 470, 94 L. Ed. 995, 70 S. Ct. 773,) and it is settled that the first and fourteenth amendments do not afford the same kind of freedom to those who communicate ideas by picketing, as they afford to those who communicate ideas by pure speech. (*Cox* v. *Louisiana,* 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453.) And as we said in the *Redding* case, on the basis of both Federal and State precedent, "* * * it is more than clear that a State may, without abridging the right of free speech, restrain picketing where * * * the picketing is for a purpose unlawful under State laws or policies, whether such policies have been expressed by the judicial organ or the legislature of the State." (32 Ill.2d at 574.) Here, the unlawful strike of the teachers was already in progress when the temporary order was sought, and the picketing the Board was seeking to restrain was being carried on for the purpose of fostering and supporting such unlawful strike. Accordingly, the first amendment considerations which controlled in *Carroll* were not present in this case. And there is another factual distinction worthy of

note. Those against whom the order was directed in *Carroll* obeyed it and then judicially challenged its validity, the latter issue carrying over into the appeals; in the case at hand defendants deliberately defied the court by ignoring and disobeying its order instead of seeking judicial relief from its consequences, and the single issue on appeal is whether defendants could properly be found in contempt for their disobedience.

More in keeping with the circumstances of this case are the teachings of *Howat* v. *Kansas,* 258 U.S. 181, 66 L. Ed. 550, 42 S. Ct. 277, and its progeny, one of the latest of which is *Walker* v. *City of Birmingham,* 388 U.S. 307, 18 L. Ed. 2d 1210, 87 S. Ct. 1824. (See also: *United States* v. *United Mine Workers,* 330 U.S. 258, 91 L. 9d. 884, 67 S. Ct. 677; *O'Brien* v. *People ex rel. Kellogg Switchboard and Supply Co.,* 216 Ill. 354; *Fansteel Metallurgical Corp.* v. *Lodge 66, etc.,* 295 Ill. App. 323, *cert.* denied 306 U.S. 642.) The simple and logical rationale of these decisions is that where a court of equity issues an injunction, with jurisdiction of the subject matter and the persons and upon pleadings properly invoking its action, the injunction must be obeyed, however erroneous the action of the court may be, until it is reversed for error by orderly review, either by the court itself or a higher court. Disobedience of such an injunction is contempt of the lawful authority of the court, and punishable as such. (See: 388 U.S. at 314, 18 L. Ed. 2d at 1216, 87 S. Ct. at 1828.) We agree with the trial court that the principle of these cases is controlling here, and while we do not believe the temporary restraining order was erroneous, that issue is not before us. *Cf. Walker* v. *City of Birmingham,* 279 Ala. 53, 181 So. 2d 493.

Unquestionably the court below had the necessary jurisdiction. Section 1 of the Injunction Act provides that our circuit courts shall have the power to grant writs of injunction, and by the provision of section 3—1 they are authorized to grant temporary restraining orders, without notice,

where it "clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon." (Ill. Rev. Stat. 1967, ch. 69, pars. 1 and 3—1.) Noteworthy also, in light of defendants' choice to ignore the order, is the further language of section 3—1 which states: "On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require." Nor, since defendants failed to attack it, can there be any question here of the sufficiency of the complaint to justify the issuance without notice. (See: *Miollis* v. *Schneider,* 77 Ill. App. 2d 420.) Under the circumstances, we hold that the circuit court had the authority and duty to issue the temporary restraining order, and that defendants' disobedience of such order, then outstanding and unreversed, merited their punishment for contempt.

Defendants next urge that the petition for rule to show cause and the order entered thereon are vague and uncertain, and insufficient to give them notice of the charges against them, the thrust of their argument being that both the petition and order should have spelled out names, dates, places and the specific conduct which constituted a violation of the order. Upon examination of the petition and the order which incorporates the petition, and bearing in mind that each of the defendants had been served with the restraining order so as to be aware of the prohibited conduct, we find no merit to this contention. In essence, defendants are contending that the evidence against them should have been pleaded. But it is a rule of pleading long established, that a pleader is not required to set out his evidence. To the contrary, only the ultimate facts to be proved should be al-

leged and not the evidentiary facts tending to prove such ultimate facts. (*Levinson* v. *Home Bank and Trust Co.,* 337 Ill. 241; *Sloan* v. *School Directors of Dist. No. 22,* 373 Ill. 511; *Burns* v. *Epstein,* 413 Ill. 476; 30 I.L.P., Pleading § 6.) Within this point of argument contention is also made that the contempt order is deficient because it failed to set forth the specific act or acts of defendants which brought them into contempt. But, manifestly, a judgment order need not recite the evidentiary facts upon which it is based. What is more, the contention of defendants that they do not know which of their acts caused them to be held in contempt is patently specious. Prior to the entry of the written order, the trial court here made oral findings of fact as to each of the defendants, which is a part of the record, leaving no doubt as to the contumacious acts for which they were to be punished. Significantly, we believe, no contention has been made on appeal that the evidence was insufficient to support the convictions.

During the course of the contempt hearing the court permitted a witness for the Board to testify, without objection by defendants, that one of the defendants had stated at a public meeting held May 3, 1969, that "no court nor anybody else could bulldoze the teachers into coming in the school room [*sic*]." Defendants now make the belated and fanciful claim that the admission and consideration of such evidence has the effect of inhibiting free speech, and also assert, as we interpret the vague argument advanced, that the contempt order may have punished the defendant in question for having exercised his right of free speech. We need look no further than the oral findings of the court to dispel the latter contention, for they clearly show that it was his actions, not his statements, upon which the court based its conclusion that the defendant had wilfully disobeyed the restraining order. Nor was the evidence inadmissible under any theory that it was protected free speech. Such an expansive interpretation of the constitutional guarantee of

free speech would make it impossible to enforce laws against conspiracies, solicitation and like offenses, and would render a court powerless to hear subjective evidence of intent. The questioned statement here was relevant to the issue of whether the disobedience of the restraining order had been wilful on the part of this defendant, and, in its context as relevant evidence, was not meant to be sheltered by the constitutional guarantees of free speech.

The judgment of the circuit court of Kankakee County was correct, and it is therefore affirmed.

*Judgment affirmed.*