(No. 46208.

THE CITY OF PANA, Appellant, v. HAROLD CROWE *et al.,* Appellees.

*Opinion filed May 20, 1974.—Rehearing denied Sept. 26, 1974.*

Joseph L. Fribley of Fribley & Fribley, of Pana, for appellant.

J. Dale Berry, and Kleiman, Cornfield & Feldman, both of Chicago, for appellees.

Frank M. Pfeifer and Thomas W. Kelty, both of Springfield, for *amicus curiae* Illinois Municipal League.

Drach, Terrell and Deffenbaugh, of Springfield, for *amicus curiae* Illinois Education Association.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

In this action, instituted by the City of Pana, the circuit court of Christian County, on June 12, 1972, issued a temporary injunction and, on July 23, 1972, a permanent injunction restraining the defendants who are individuals, and Local Union No. 726 of the American Federation of State, County and Municipal Employees, from the following acts:

> "(a) Engaging in a strike or any form of cessation of work against the City of Pana.
>
> (b) Hindering or obstructing in any manner the use and maintenance of the building, structures, machinery and equipment owned, rented, maintained and used by the City of Pana, in its governmental or proprietary functions."

Upon appeal, the Appellate Court for the Fifth District reversed (13 Ill. App. 3d 90) and granted a certificate of importance. In its opinion, the appellate court urged the legislature to act with respect to the problem involved in the case.

The case turns upon the effect of what is referred to as the "anti-injunction act," which was enacted in 1925. That statute provides:

> "No restraining order or injunction shall be granted by any court of this State, *** in any case involving or growing out of a dispute concerning terms or conditions of employment ***." Ill. Rev. Stat. 1973, ch. 48, par. 2a.

The defendants take the position that the plain language of the statute compelled the conclusion reached by the appellate court. It is true that if we look only at the words of the 1925 act, the trial court should not have entered the injunction appealed from. But the history of

the statute indicates clearly, in our opinion, that it was not intended to apply to work stoppages by governmental employees. In the first case coming to this court under the statute, *Fenske Bros. v. Upholsterers International Union* (1934), 358 Ill. 239, *cert. denied* (1935), 295 U.S. 734, 79 L. Ed. 1682, 55 S. Ct. 645, the purpose of the statute to prohibit only the enjoining of lawful conduct was repeatedly emphasized:

> "Section 12 of article 6 of the constitution of this State provides: 'The circuit courts shall have original jurisdiction of all causes in law and equity.' It is urged that because that statute prohibits the issuance of injunctions against the peaceable acts therein mentioned, the law deprives the circuit court of its jurisdiction fixed by the constitution and therefore contravenes that provision. In *Stephens v. Chicago, Burlington and Quincy Railroad Co.*, 303 Ill. 49, we said: 'The constitution confers upon the circuit court jurisdiction of all causes in equity, and the legislature is without power to deprive it of any part of this jurisdiction.' It is to be noticed, however, that the statute in controversy does not deprive circuit courts of jurisdiction to restrain any unlawful act, nor of jurisdiction to determine whether or not any act complained of is legal or illegal. So far as the statute is concerned, circuit courts have the same jurisdiction in labor disputes they have always had, for it cannot be said that they ever had the power, by the constitution or otherwise, to prevent or penalize the performance of lawful acts concerning which no cause of action existed." *Fenske Bros. v. Upholsterers International Union* (1934), 358 Ill. 239, 257.

In 1925 strikes by governmental employees were universally considered unlawful, and that view prevails generally today in the absence of legislative sanction. (See Annot.

(1971), 37 A.L.R.3d 1147.) It may also be noted that the Federal counterpart of the statute involved in this case, the Norris-LaGuardia Act, 29 U.S.C. sec. 101 (1970), was held in *United States v. United Mine, Workers of America* (1947), 330 U.S. 258, 91 L. Ed. 884, 67 S. Ct. 677, to be inapplicable to employees of the Federal government.

In this court, the first case involving the applicability of the anti-injunction act to strikes by governmental employees was *Board of Education v. Redding* (1965), 32 Ill.2d 567. There the trial court had denied the Board of Education's application for an injunction to restrain a strike by its custodial employees. This court reversed, and remanded the cause with directions to grant injunctive relief. The court rested its opinion flatly upon the unlawfulness of a strike by governmental employees, saying: "Although this is a case of first impression in a reviewing court of this jurisdiction, it is, so far as we can ascertain, the universal view that there is no inherent right in municipal employees to strike against their governmental employer, whether Federal, State, or a political subdivision thereof, and that a strike of municipal employees for any purpose is illegal. [Citations omitted.] The underlying basis for the policy against strikes by public employees is the sound and demanding notion that governmental functions may not be impeded or obstructed, as well as the concept that the profit motive, inherent in the principle of free enterprise, is absent in the governmental function." 32 Ill.2d at 571-72.

The doctrine that public employees have no legal right to engage in a strike has been reiterated. (See *City of Rockford v. Local 413, Int'l Ass'n of Firefighters* (1968), 98 Ill. App. 2d 36 (firemen); *Board of Junior College District No. 508 v. Cook County College Teachers Union* (1970), 126 Ill. App. 2d 418; *cert. denied* (1971), 402 U.S. 998, 29 L. Ed. 2d 165, 91 S. Ct. 2168 (college teachers); *Fletcher v. Civil Service Com. of Waukegan* (1972), 6 Ill. App. 3d 593, 598-9 (police officers); *Allen v.*

*Maurer* (1972), 6 Ill. App. 3d 633 (school teachers).) In *Board of Education v. Kankakee Federation of Teachers* (1970), 46 Ill.2d 439, *cert. denied* (1971), 403 U.S. 904, 29 L. Ed. 2d 679, 91 S. Ct. 2203, this court again stated that a strike by school employees is unlawful as being in violation of the expressed public policy of this State. 46 Ill.2d at 439, 441.

The only deviation from the line of authority which has consistently held that the anti-injunction act is not applicable to governmental employees occurred in *County of Peoria v. Benedict* (1970), 47 Ill.2d 166, *cert. denied* (1971), 402 U.S. 929, 28 L. Ed. 2d 862, 91 S. Ct. 1524. In that case, which involved a strike by employees of a nursing home operated by Peoria County, the court held that a preliminary injunction was improperly issued, saying: "In *Peters v. South Chicago Community Hospital,* 44 Ill.2d 22, we held the Illinois anti-injunction law applicable to employees of a non-profit hospital. For the same reasons stated therein, we find the anti-injunction act [citation] applicable to the instant case. That Act provides: 'No restraining order or injunction shall be granted by any court of this State, *** in any case involving or growing out of a dispute concerning terms or conditions of employment, ***.' Accordingly, the preliminary injunction was erroneously issued." 47 Ill.2d at 169-170.

The *Peters* case, which was the case upon which the *Benedict* opinion was entirely based, involved a strike of employees of a not-for-profit community hospital. In that case the court, in a *per curiam* opinion, applied the anti-injunction act to invalidate an injunction issued to restrain a strike of not-for-profit hospital employees. In the opinion the court stated:

"It is true that this court in *Redding* (32 Ill.2d 567) held that the proper and efficient education of children is an overriding public interest of such importance as to transcend the right of custodial workers to strike or picket a

public school. However, the public policy to 'provide a thorough and efficient system of free schools' is expressly stated in section 1 of article VIII of our constitution. (Ill. Const., art. VIII, sec. 1.) Thus, it was not this court that declared the public policy, as did the appellate court in this case, it was the constitution that declared the public policy." 44 Ill.2d at 26-27.

Apparently because this court's opinion in the *Redding* case referred to the constitutional duty imposed upon the General Assembly to "provide a thorough and efficient system of free schools," the plaintiff has felt it necessary to refer to article XI of the Constitution of 1970, which asserts "[t]he public policy of the State and the duty of each person" to provide and maintain a healthful environment. It is therefore appropriate to repeat what has often been said before, that the public policy of the State is not found solely in the provisions of the Constitution. (See, *e.g., Albers v. Lamson* (1942), 380 Ill. 35, 40, and cases cited.) In our opinion neither the *Peters* case nor the *Benedict* case requires that we depart in this case from the long-standing rule that public employees have no right to strike and that a strike by them is unlawful and therefore not within the scope of the anti-injunction act.

The General Assembly has acquiesced in the conclusion of this court and the appellate court with respect to the unlawfulness of strikes of public employees. Over the years since 1925, statutes have been enacted which provided for collective bargaining and arbitration. (See, *e.g.,* Ill. Rev. Stat. 1951, ch. 24, pars. 13A–1 to 13A–4 (firemen); Ill. Rev. Stat. 1945, ch. 111 2/3, par. 328a (Chicago Transit Authority); Public Act 78–5, sec. 2.15 (3d Special Session 1973) (Regional Transit Authority).) Although the General Assembly has thus dealt with the matter of labor relations of governmental employees, it has refused to interfere with the conclusion that a strike of public employees is unlawful.

The situation of the governing body, the public, and the employees differs sharply in a strike of governmental employees from that involved in a strike in private industry. Ordinarily the functions provided by government are not of such a nature that substitution of product or of service is possible, as it often is in the case of strikes in the private sector. Moreover, strikes of public employees are very apt to create immediate emergencies bearing sharply upon the health, safety and welfare of the public. The situation in the present case, although only a relatively small municipality is involved, is illustrative: all of the employees of the city went on strike, including sewer and water employees as well as the members of the police department. The complaint alleged, and the situation inherently involved, imminent danger to the health of the citizens through a contaminated water supply, as well as potential danger to the public safety.

The judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*