THE BOARD OF EDUCATION OF DANVILLE COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 118, Plaintiff-Appellee, v. DANVILLE EDUCATION ASSOCIATION et al., Defendants-Appellants.

Fourth District   No. 14662

Opinion filed May 12, 1978.

GREEN, P. J., specially concurring.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellants.

Wright & Wright, of Danville (Wendell W. Wright, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

On August 21, 1977, defendant Danville Education Association (DEA) voted to strike and its members were absent the following day when classes were scheduled to commence. Some picketing occurred. Plaintiff Danville Board of Education (Board) filed its complaint for injunction on August 25. The attached affidavit of Superintendent Don Woods stated that a strike and picketing would irreparably injure the performance of the Board's duty to operate the school system. A temporary restraining order was issued on August 25, after which the strike and picketing ceased. The hearing on the complaint occurred September 2, after the DEA's motion to dismiss was denied. The sole witness, DEA president Jan Struebing, testified that the picketing had an informational purpose, that school employees had crossed the picket lines unimpeded, and that she was unaware of any violence connected with the picketing. In granting the preliminary injunction against picketing, the court remarked, "* * * it isn't free speech to picket * * * I find [informational picketing] to be disruptive * * *." DEA's timely appeal only questions that part of the injunction order prohibiting "picketing, parading, or patroling at or in the vicinity of the school campuses maintained and operated" by the Board.

■■ During argument, this court was informed that the parties have executed a new contract and that the contract appears to have settled their differences. While we would normally dismiss the appeal as moot under these circumstances, we find the question involved to have overriding public importance and, therefore, we address the issue presented. Compare *Phillips v. Board of Education* (1974), 23 Ill. App. 3d 124, 318 N.E.2d 687, and cases therein cited.

■■ We begin with the well-settled rule that a teacher strike is illegal and may be enjoined. (*Board of Education v. Kankakee Federation of Teachers* (1970), 46 Ill. 2d 439, 264 N.E.2d 18.) The underlying policy behind the rule is that government functions, such as education, may not be impeded or obstructed. *Board of Education v. Redding* (1965), 32 Ill. 2d 567, 207 N.E.2d 427; *City of Pana v. Crowe* (1974), 57 Ill. 2d 547, 316 N.E.2d 513.

In *Redding*, the supreme court ruled the trial court to have been in error in refusing to enjoin both the striking and the picketing. The supreme court quoted Mr. Justice Frankfurter's statement in *Hughes v. Superior Court of California* (1950), 339 U.S. 460, 94 L. Ed. 985, 70 S. Ct. 718, that picketing is not the exact equivalent of free speech and is not beyond the control of a State if the manner in which it is conducted or its purpose gives valid ground for its disallowance. After noting the specific situation must control a decision, the *Redding* court concluded:

> "The picketing here, though peaceful, was for the purpose of fostering and supporting an unlawful strike against a governmental employer and, being for an unlawful purpose, should have been enjoined for this reason alone. Apart from this, however, the effect of the influences exerted by the picketing was to impede and obstruct a vital and important governmental function—the proper and efficient education of our children—making its curtailment necessary to protect the patently overriding public interest." 32 Ill. 2d 567, 575, 207 N.E.2d 427, 432.

In ruling that the teachers were required to obey an injunction issued by a court with jurisdiction regardless of whether it was erroneously entered, the court in *Kankakee* also commented that a court can properly enjoin picketing which supports an unlawful strike.

The Board made no showing that future informational picketing would be supportive of an unlawful purpose. It is uncontested that the unlawful work stoppage had earlier ceased. The Board also made no showing that the manner in which the picketing would occur would impede or obstruct the educational services provided. Unlike *Redding*, no evidence indicated that pupil attendance would suffer from future informational picketing alone. The DEA president did testify that despite the earlier work stoppage and picketing, nonteacher personnel did cross the picket lines and report for work. No showing was made by the Board whether the schools were or would be deprived of needed goods or services because of the refusal of repairmen and deliverymen to cross the picket lines, as occurred in *Redding*. Thus, apart from the conclusory statement in Woods' affidavit, the Board did not show that future informational picketing, of itself, would actually disrupt the operation of the school system or be in furtherance of an unlawful purpose.

■■ Appellate courts in post-*Redding* decisions have held that the mere concurrence of picketing with an illegal strike against an entity furnishing public service does not authorize a court to enjoin future picketing by the strikers when it is not shown by the moving party that the picketing would be disruptive. (*City of Rockford v. Local No. 413, International Association of Firefighters* (1968), 98 Ill. App. 2d 36, 240 N.E.2d 705; *Peters v. South Chicago Community Hospital* (1969), 107 Ill. App. 2d 460, 246 N.E.2d 840, *rev'd on other grounds* (1969), 44 Ill. 2d 22, 253 N.E.2d 375. The supreme court in *Peters* reversed the appellate decision restraining the union from striking the not-for-profit hospitals since the hospitals were not within any exception to this State's anti-injunction act (Ill. Rev. Stat. 1975, ch. 48, par. 2(a)). The supreme court, therefore, did not pass upon that part of the appellate opinion discussing when picketing might be enjoined.) We agree with the ruling in these cases. The exercise of first amendment free speech rights through picketing cannot be curtailed unless the countervailing interests of protecting the public interest and the unlawful purpose of the picketing are shown, the burden resting on the applicant for the injunction.

■■ Since the case before us is moot, further proceedings in the trial court are not necessary. It would also be inappropriate for this court to give an advisory opinion on permissible injunctive orders concerning picketing; however, as stated in *Redding,* the specific situation must control the trial court's actions. (See, *e.g., Board of Education v. Parkhill* (1977), 50 Ill. App. 3d 60, 365 N.E.2d 195.) That part of the injunction order that might be considered as prohibiting picketing after the resumption of services is reversed.

The injunction order is reversed in part and vacated in part.

WEBBER, J., concurs.

Mr. PRESIDING JUSTICE GREEN, specially concurring:

I agree with the majority that a proper balance between the restricted first amendment right to picket and the public interest in the operation of government, and particularly the operation of the constitutionally mandated system of public schools, requires us to rule that the picketing should not have been enjoined here.

I disagree with the majority's reluctance to speak with more specificity as to the duty of a trial judge when faced with a request to enjoin picketing related to an illegal strike by school employees. Our decision requires a trial judge to draw a fine line between this case and *Redding.* The sole reason for our deciding this moot case is because the issue involved is one of great public importance which is likely to recur

and upon which public officials need a determination for further guidance. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769, *cert. denied* (1952), 344 U.S. 824, 97 L. Ed. 642, 73 S. Ct. 41.) If each case depends primarily upon the circumstances of that case, our decision here is useless.

Although *Redding* recognizes that the specific situation controls as to whether the public interest overrides the right to picket, that opinion clearly states that the court is required to enjoin picketing against a school district if the picketing (1) is for the "purpose of fostering and supporting an unlawful strike," or (2) impedes and obstructs the functioning of the school system.

Here, unlike in *Redding*, the illegal work stoppage was suspended by the DEA in obedience to the temporary restraining order prior to the hearing on the request for the temporary injunction. Because of this time interval, any subsequent picketing would not necessarily be in support of an illegal purpose but could merely inform the public of the issues in the dispute which gave rise to the work stoppage. The school district made no showing that future picketing would be for any such purpose. Although the trial court, when ruling upon the request for a temporary restraining order, properly followed *Redding* in including in the order a prohibition against the picketing which was occurring in support of the illegal strike, no such strike existed at the time of the hearing on the request for the temporary injunction.

I agree with the majority that here, unlike in *Redding*, no showing was made that the picketing had caused substantial absenteeism, or deterred purveyors, deliverymen, or repairmen from servicing the schools. That this would necessarily result from picketing will not be presumed. However, our decision should not be interpreted to mean that if subsequent picketing, even though peaceful and purely informational, were later shown to cause substantial absenteeism or a disruption of services, the court would not be under a duty to enjoin the picketing.