ARTHUR R. STROBECK, JR., Plaintiff-Appellee, *v.* ILLINOIS CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 77-1628

Opinion filed March 27, 1979.—Rehearing denied May 1, 1979.

William J. Scott, Attorney General, of Chicago, for appellants.

Ellis E. Reid, of Chicago, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from an administrative review by the circuit court of Cook County, Law Division, of proceedings conducted by defendant

Illinois Civil Service Commission (hereinafter referred to as the Commission). Plaintiff, Arthur R. Strobeck, Jr., an employee of defendant, Illinois Department of Labor, had been discharged from employment by the Commission due to Strobeck's unauthorized absence from work. The circuit court of Cook County reversed the decision of the Commission and ordered Strobeck reinstated to his former position without loss of compensation or seniority. The circuit court also denied defendants' petition for rehearing and stayed the enforcement of its reversal order. It is from these orders that defendants appeal.

Plaintiff had been a certified employee of the Department of Labor holding the position of Employment Security Manpower Representative II. Plaintiff was employed in the Department's Evanston office.

In June of 1976, plaintiff requested and received approval for a vacation leave which was to commence July 12, 1976, and continue until July 19, 1976. At approximately 4:30 p.m. on July 6, 1976, plaintiff's supervisor, Joan Roberts, received a communication concerning all leaves. Roberts, after receiving the communication, announced that all leaves had been rescinded by the Department. The contents of the announcement were subsequently reduced to a memorandum, which was duplicated and distributed to office personnel.

Plaintiff failed to appear at his office on July 7, 8 and 9 and did not report to work during his vacation leave. Pursuant to these absences the Department sought to discharge plaintiff from employment. The discharge was based upon the following charges:

1. Unauthorized absence from 7-7-76 to 7-13-76, in violation of Rule 3—350, Department of Personnel, and failure to provide justifiable reason for the absence when given an opportunity to do so before the Department of Labor, Bureau of Employment Security.

2. Participation in an illegal work stoppage at the Illinois Department of Labor, Bureau of Employment Security from 7-7-76 to 7-13-76.

3. Instigation of an illegal work stoppage at the Illinois Eepartment of Labor, Bureau of Employment Security from 7-7-76 to 7-13-76.

A hearing on these charges was held before the Commission. Robert Gammie, Joan Roberts, Lorraine De Meulenaere, Paul Kuick, Emerson Jackson, Sylvia Swidler, Irving Senn, John Dooley, Lois Johnson, Arthur White, Vitian Morris, Johanna Ellison, Margaret Hershberger and Robert Duback testified at the hearing. Plaintiff testified in his own behalf.

Robert Gammie testified that he was the manager of the office which employed plaintiff. Gammie was aware of plaintiff's membership in the local union (1006) and had discussed union activities with plaintiff. He

stated that plaintiff carried on union conversations on the telephone and handed out union literature in the office.

Gammie authorized plaintiff's six-day vacation leave. Gammie indicated that he never informed plaintiff that the Department rescinded all leaves.

Gammie also stated that plaintiff was absent from work commencing July 7, 1976, due to a labor dispute. Gammie indicated that he never saw plaintiff picket the Evanston office.

Joan Roberts testified that Mr. Gammie was her immediate supervisor at the Evanston office. She was plaintiff's immediate supervisor and a member of local union 1006. Roberts further indicated that when plaintiff informed her that a strike was forthcoming, this was the first notification of the strike received by her.

Roberts stated that on July 6, 1976, she announced to the office that all approved leaves had to be "resubmitted" and that sick leaves had to be accompanied by a physician's statement upon return to work. She announced that these policies took immediate effect. Roberts stated that she was not certain if plaintiff was at his desk at the time of the announcement.

Lorraine De Meulenaere testified that she was secretary to Mr. Gammie at the Evanston office. She was present in the office on July 6, 1976, when Joan Roberts announced that all leaves had been rescinded. She further testified that plaintiff was present at the time of the announcement.

De Meulenaere testified that she typed a memorandum containing the information pertaining to leaves, made copies and placed one before plaintiff who was at his desk.

Paul Kuick testified that he was an employee of the Illinois State Employment Service in the Montrose Avenue office. Kuick was a union member and participated in a strike on July 12, 1976.

Kuick stated that he observed plaintiff carrying a picket sign at the Montrose Avenue office. He recalled plaintiff speaking to one employee about the strike. Kuick also recalled that plaintiff distributed some literature.

Emerson Jackson testified that he is the manager of the Montrose Avenue Department of Labor office. On July 12, 1976, he observed plaintiff carrying a picket sign. The sign stated "Local 1006 on Strike."

Sylvia Swidler testified that she is in charge of personnel planning for the Illinois Bureau of Employment Security. On days between July 7 and July 13, 1976, she observed plaintiff outside the main office of the Bureau of Employment Security at 910 South Michigan Avenue. Plaintiff was talking into a "horn."

Irving Senn testified that he is employed at the Evanston office of the Illinois Bureau of Employment Security. He testified as to his familiarity with plaintiff. Senn is, as is plaintiff, a member of Local 1006.

On July 6, 1976, Senn heard the announcement by Joan Roberts concerning rescission of leaves. Senn remembered that, at the time of the announcement, Roberts and De Meulenaere were present in the office.

Senn also indicated that plaintiff was a union steward. Plaintiff informed Senn of the union's strike vote and distributed literature concerning that vote to Senn.

John Dooley testified that he is an employment representative at the Evanston office. He sat next to plaintiff in the office. Dooley believed that plaintiff was present in the office on July 6, 1976, at 4:30 p.m., but he was not certain that plaintiff was at his desk.

Lois Johnson testified that she is employed at the Evanston office of the Department of Labor. Johnson was familiar with plaintiff. Johnson stated that she is a member of Local 1006.

Johnson was present in the office on July 6, 1976, when Joan Roberts announced that leaves would be rescinded. Johnson remembered plaintiff's presence that day although Johnson did not know of plaintiff's whereabouts at the time of the announcement.

Johnson indicated that plaintiff had been acting as union steward. Plaintiff distributed union literature in the office. Johnson spoke with plaintiff prior to the strike but she stated that the conversation was "nothing of consequence."

Arthur White testified that he is the assistant regional manager for Metro Region Unemployment Insurance (Bureau of Employment Security, State of Illinois). He stated that he kept records pertaining to daily absenteeism and increased or decreased productivity. Each local manager supplied White with information concerning the numbers of (1) employees seen picketing, (2) employees on authorized leave, (3) employees absent and (4) employees at work.

Vitian Morris testified that she is employed by the Illinois Bureau of Employment Security. She is a member of Local 1006 and was absent from work July 7, 1976, due to the strike. She stated that after the strike she was called back to work but 33 other strikers were not.

Johanna Ellison testified that she is a research analyst for the Department of Labor, a member of Local 1006 and editor of the union newspaper. Her testimony referred to 15 or 20 union leaflets concerning the strike. Ellison stated that plaintiff did not write or distribute the leaflets. Ellison also indicated that she was recalled to work subsequent to the termination of the work stoppage.

Margaret Hershberger, presently unemployed, testified that she had

been employed at the Division of Unemployment, 910 S. Michigan Avenue. She is presently a member of Local 1006 and the recording secretary thereof.

Hershberger stated that plaintiff and Robert Duback were co-stewards in the Evanston office. She indicated that Duback was reinstated and transferred after the strike. She also noted that of 33 discharged strikers the "majority or more than 23 are probably stewards or other elected officers of the local."

Robert Duback testified that he is an unemployment adjudicator for the Department of Labor, Division of Unemployment Insurance Office. Plaintiff held the other steward position on the Employment Security side of the office. Duback distributed strike literature in the Evanston office. Duback stated that he participated in the strike, was discharged and subsequently recalled to work.

Duback indicated that on July 6, 1976, he spoke with plaintiff in Duback's office between 4:30-5 p.m. Duback's office was in the rear of the building. Duback testified that prior to leaving the office on that day he was unaware that the Department of Labor had rescinded all leaves.

Plaintiff, Arthur Strobeck, also testified before the Commission. He stated that he was co-steward of Local 1006, Evanston office. In this capacity plaintiff handled grievances, organized the union membership and informed the membership of local union activities.

Strobeck indicated that a strike vote was taken one week prior to the commencement of the strike. Strike information was distributed by Strobeck within the Evanston office.

Strobeck stated that he was present at the Evanston office on July 6, 1976, but was unaware of any announcement by Joan Roberts. Strobeck was absent from work July 7, 8 and 9 due to his participation in the work stoppage. He indicated that with respect to the strike he had no decision-making authority other than his single vote. Strobeck did not recall encouraging any employees to honor the picket line and participate in the work stoppage.

Pursuant to this hearing the hearing officer recommended a suspension. The Commission, however, found that plaintiff's participation in a work stoppage constituted a "dischargeable offense." Consequently, the Commission found that plaintiff illegally withheld his services from public employment and terminated plaintiff's employment.

On December 16, 1976, plaintiff filed, in the circuit court of Cook County, a complaint for administrative review. Plaintiff, through this pleading, prayed that the record of proceedings before the Commission be reviewed and the decision of the Commission reversed.

A hearing commenced in the circuit court of Cook County, Law Division, on August 15, 1977. At the termination of the hearing the court

entered an order reversing the decision of the Commission and reinstating plaintiff to his former position without any loss in compensation or seniority.

On August 19, 1977, defendants filed a motion in circuit court for a stay of that court's August 15, 1977, order. Also, on August 19, 1977, defendants filed a petition for rehearing. The circuit court, through its order of August 23, 1977, denied the petition for rehearing and granted a stay of the August 15, 1977, order pending appeal. It is from the orders of August 15, 1977, and August 23, 1977, that defendants appeal.

■■ We note at the outset of our analysis that the evidence adduced at the administrative level along with the agency's findings of fact on that evidence are prima facie true and correct. (*Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782, *appeal dismissed* (1978), 435 U.S. 911, 55 L. Ed. 2d 502, 98 S. Ct. 1463.) The Commission's findings of fact and gravity can be set aside on review only if contrary to the manifest weight of the evidence. *Hardaway v. Civil Service Com.* (1977), 52 Ill. App. 3d 494, 367 N.E.2d 778; *Epstein v. Civil Service Com.*

Plaintiff contends that his discharge by the Department of Labor denied him equal protection of law. This contention is based upon the fact that differing punishments were imposed upon striking employees. Some of the employee-participants in the work stoppage were merely suspended and, subsequently, recalled to work. Other employees, including plaintiff, were discharged. The question presented for our resolution is whether such differential treatment of employees who had participated in the work stoppage can withstand and satisfy constitutional scrutiny. We believe this question should be answered in the affirmative.

■■ ■ We first note that the right to public employment is not fundamental in an equal protection context. (*Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Service Com.* (2d Cir. 1973), 482 F.2d 1333, *cert. denied* (1975), 421 U.S. 991, 44 L. Ed. 2d 481, 95 S. Ct. 1997. See *Dendor v. Board of Fire & Police Commissioners* (1973), 11 Ill. App. 3d 582, 297 N.E.2d 316 (indicating that public employee does not have a constitutional right to such employment).) Furthermore, plaintiff's claim does not involve the consideration of any suspect classifications. Therefore, we will apply the "rational basis" test to determine if defendants' actions denied plaintiff the equal protection of law. This test compels us to determine whether the particular administrative classification is rationally designed to further a legitimate State purpose. (See *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 368 N.E.2d 903.) If the classification has some reasonable basis it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. *Dandridge v. Williams* (1970), 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153.

■ Defendants must retain broad discretion in attempting to resolve problems relating to public employees. (Compare *Herzbrun v. Milwaukee County* (7th Cir. 1974), 504 F.2d 1189.) Problems of discipline cannot be divorced from any other matters requiring administrative action by defendants. Although all participants in the work stoppage were subject to discharge we presume that such mass discharge would have debilitated the Department of Labor work force. Consequently, in its discretion, the Department did not attempt to terminate the employment of all the participants in the work stoppage. The strike settlement contained in the record on appeal reveals that the union was aware of the Department's anticipated course of conduct regarding the strikers. The maintenance of a work force is a legitimate State purpose and the reinstatement of various suspended employees is rationally related thereto.

■ Consequently, we find plaintiff's equal protection claim without merit. The discharge of plaintiff, in contrast with the suspensions of others, did not deny plaintiff equal protection of law. *Herzbrun v. Milwaukee County* (7th Cir. 1974), 504 F.2d 1189.

We believe that the determination of the following issue is dispositive of this appeal: Whether plaintiff was properly discharged for his participation in a work stoppage? We further believe that the discharge was appropriate.

A review of various decisions of the courts of this State reflects that public employees have no protected right to engage in a strike. (*City of Pana v. Crowe* (1974), 57 Ill. 2d 547, 316 N.E.2d 513; *Board of Education v. Danville Education Association* (1978), 59 Ill. App. 3d 726, 376 N.E.2d 430; *Board of Education v. Parkhill* (1977), 50 Ill. App. 3d 60, 365 N.E.2d 195; *Littrell v. Board of Education* (1977), 45 Ill. App. 3d 690, 360 N.E.2d 102; *Fletcher v. Civil Service Com.* (1972), 6 Ill. App. 3d 593, 286 N.E.2d 130.) The underlying policy behind the rule is that government functions may not be impeded or obstructed. *Board of Education v. Danville Education Association* (1978), 59 Ill. App. 3d 726, 376 N.E.2d 430.

The Commission determined that unauthorized absence from employment due to participation in a work stoppage was cause for discharge. We realize that this is a harsh sanction. We also note that the Commission, by discharging plaintiff, declined to adopt the disposition recommended by the hearing officer. Nevertheless, we cannot assume the function of a super-commission. The Commission is better able to determine the effect that plaintiff's conduct will have upon plaintiff's employer. See *Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782; *Nolting v. Civil Service Com.* (1955), 7 Ill. App. 2d 147, 129 N.E.2d 236.

■ We are satisfied that plaintiff was granted a fair and proper hearing

before the Commission. Furthermore, we are satisfied that the findings of the Commission are not contrary to the manifest weight of the evidence. Accordingly, we find that the circuit court erred in reversing the decision reached by the Commission. Therefore, the judgment of the circuit court of Cook County is reversed and the finding of the Commission is affirmed.

Reversed.

DOWNING, J., concurs.

Mr. JUSTICE PERLIN, dissenting:

I respectfully dissent from the opinion of my colleagues because I believe the dismissal ordered by the Commission in this instance constitutes an abuse of discretion. It is true that a public employee does not have a constitutional right to public employment; however, such employee cannot be barred or removed from that employment arbitrarily or in disregard of his or her constitutional rights. (*Dendor v. Board of Fire & Police Commissioners* (1st Dist. 1973), 11 Ill. App. 3d 582, 588-89, 297 N.E.2d 316.) Although it would be impractical entirely to deprive the Commission of the power to exercise discretion in solving disciplinary problems and of the ability to impose a particular sanction depending upon the severity of the violation, we should not permit the unbridled application of discretion to foster the potential of discrimination. I cannot agree with the rationale of the Commission in its attempt to justify the selective dismissal on the basis that the Department could not function if all of the guilty persons were to be equally punished. To select for dismissal a few of approximately 300 employees who had engaged in the same joint action, while retaining the others, subverts the concept of "equal justice under the law" and could give rise to adverse social effects. I do not believe that discrimination should be encouraged in the guise of an exercise of discretion. Therefore, I would reverse the decision of the Commission.